# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 3172 | **DATE** | 7/5/2001 |
| **CASE TITLE** | Daniel T. Grace vs. Ansul, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Ansul's motions for Judgment as a matter of law and for a new trial are both denied. (53-1, 53-2)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 0 6 2001 | |
| | Notified counsel by telephone. | | date docketed | 57 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | 7/5/2001 | |
| | Copy to judge/magistrate judge. | 01 JUL -5 PM 2: 18 | date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANIEL T. GRACE,                )
                                )
            Plaintiff,           )
                                )
      v.                         )    No.  98 C 3172
                                )
ANSUL, INC.,                    )
                                )
            Defendant.           )

MEMORANDUM OPINION AND ORDER

After a six-day jury trial during which the jury heard each side's version of the sharply controverted facts in this action, the jury returned its verdict in which it found that the age of Daniel Grace ("Grace," who was 59 years old when he was fired by Ansul, Inc. ("Ansul") after having been employed by the company for some 20 years) had been a substantial motivating factor in Ansul's decision to terminate his employment (see the attached verdict). Next Ansul filed a timely alternative post-trial motion, first seeking a judgment as a matter of law under Fed. R. Civ. P. ("Rule") 50(b) and then asking for a new trial under Rule 59(b). Ansul's motion has now been responded to by a memorandum from Grace's counsel, rendering both facets of the motion ripe for decision. For the reasons stated here, Ansul's motion is denied in its entirety.

Ansul's Rule 50(b) Motion

In material part Ansul's difficulties, both at trial and in its post-trial motion, stem from its apparent inability (or

perhaps its unwillingness) to recognize that Grace's claim is based on the age-motivated <u>termination</u> of his employment by Ansul. Instead, virtually all of Ansul's efforts throughout the trial were focused on denigrating Grace's work in his changed position as Market Development Manager, pretty well ignoring the fact that Grace's previous long-term and high-quality performance in the field of sales and sales management provided a sound basis for a continued future with Ansul in that area of activity, if it had not been for what the jury could legitimately find was age-based animus on Ansul's part. And Ansul has persisted in that myopic approach in its post-trial motion, again failing to address a totally supportable foundation for the jury's verdict against it.

To put the matter in terms to which Ansul never seems to face up, suppose the jury had found that Ansul was entirely right in its criticism of Grace's performance in his new job as Market Development Manager, a position for which he had lacked prior direct experience. Suppose that Robert Gibbs ("Gibbs," then Ansul's National Sales Director with responsibility for both market development and sales) had been mistaken in recommending Grace for that new job in the first place (it should be noted that there was evidence that the jury could credit that Ansul's President Karl Kinkead ("Kinkead"), the ultimate decisionmaker in Grace's firing, was not happy with Grace's designation to the new

2

job to begin with, having expressed the view that Grace was "not a fireball").[1] Even so, the jury would have been more than justified in viewing as age-discriminatory Ansul's unwillingness to return Grace to the type of sales management position in which he had performed extremely well for nearly two decades. That quality of performance had, after all, been a predicate for Grace's job shift (viewed as a promotion) to Market Development Manager--and on the sales management front, nothing had changed at all except that Grace was older (a classic situation calling for a finding of age-based discrimination).

Yet Ansul's post-trial Rule 50(b) motion (perhaps unsurprisingly, given the nature of Ansul's just-described fundamental focus and thrust in presenting its trial evidence) says <u>not a word</u> on that subject. Instead Ansul's Motion at 3-6 speaks <u>only</u> of Grace's assertedly unsatisfactory performance in the Market Development Manager post. And in an ultimate quantum leap that ignores entirely the alternative to Grace's termination

---

[1] It must be emphasized that contrary to the principles applicable to such post-trial motions, the just-stated suppositions give Ansul rather than Grace the benefit of a hypothetical best-case scenario in the respects referred to in the text. It was of course entirely within the jury's province, on the conflicting evidence before it, to find those facts in Grace's favor instead. What is said here simply illustrates the vital flaw in Ansul's pretty-much-exclusive emphasis on the decision to remove Grace from the Market Development Manager position, rather than on the later decision to terminate him (which implicated, or should have implicated, very different considerations).

3

that was represented by his request to return to the area of his extensive experience and unmarred performance (the subject on which, again, Ansul is totally silent), Ansul's Motion at 6 skips over the matter entirely, ignoring both the substantive distinction and the time differential between Grace's being displaced as Market Development Manager and his actual termination:

> When Grace got so far behind that the timely introduction of the [R103] project was in jeopardy, he was terminated.

Once more Ansul is not entitled to the benefit of the hypothetical scenario set out above. If the jury viewed those subjects differently, as it was surely within its rights to do in light of the conflicting evidence (remember that on a defendant's Rule 50(b) motion, all the trial evidence must be viewed in a light most favorable to plaintiff (see, e.g., <u>Jones v. Western & S. Life Ins. Co.</u>, 91 F.3d 1032, 1036 (7th Cir. 1996) and cases cited there) and that a judgment as a matter of law should be granted only when there can be a single conclusion and no other to be drawn from the evidence (see, e.g., <u>Emmel v. Coca Cola Bottling Co.</u>, 95 F.3d 627, 629-30 (7th Cir. 1996) and cases cited there)--it could also have rejected Grace's separation from the Market Development Manager position as having been a product of age discrimination.

But the point made here, and the thing that squarely defeats

4

Ansul's Rule 50(b) motion, is that such a determination was not at all essential to the verdict that the jury reached as to Grace's _termination_. And consistently with that point, Grace's Response at 1-2 ticks off a number of ample reasons that a reasonable jury could have found--and it must be remembered that the actual jury did rule for Grace and against Ansul--that Grace was the victim of an age-motivated termination. In sum, the Rule 50(b) motion must be and is denied.

## Ansul's Rule 59(b) Motion

Here too Grace has accurately put forth the operative legal standards and relevant Seventh Circuit authority dealing with motions for a new trial. No such motion should be granted unless the jury verdict is against the manifest weight of the evidence or the trial involved clearly prejudicial error (see, e.g., Romero v. Cincinnati Inc., 171 F.3d 1091, 1096 (7th Cir. 1999) and cases cited there). Any such claimed prejudice must impact on the substantial rights of a litigant (Lemons v. Skidmore, 985 F.2d 354, 357 (7th Cir. 1993)), and that means that the claimed errors must have been sufficiently substantial to have amounted to the denial of a fair trial (see, e.g., Wilson v. Groaning, 25 F.3d 581, 584 (7th Cir. 1994) and cases cited there). Ansul's several assertions will be viewed through that set of lens prescriptions.

5

David Pelton ("Pelton") Testimony

It is of course the universally-established law that it is the honest perception of the decisionmaker at the time of an adverse employment decision that controls whether or not prohibited discriminatory motives are at work. Every day District Courts rule, and Courts of Appeals uphold such rulings, that neither at trial nor at the equivalent summary judgment stage will a plaintiff be permitted to show that the decisions involved were wrong on the merits--that the employee was really doing his or her job well even though the boss honestly believed otherwise. But Ansul cavils at this Court's ruling on the logical counterpart of that proposition--a ruling that Pelton, who took over the Market Development Manager position as Grace's replacement, was not permitted to respond to a question that sought to get into his own performance of the job after that takeover--a question intended to elicit Pelton's opinion that would have cast aspersions on Grace's performance up to that point.

That is of course the flipside of the evidentiary rulings that are uniformly made against plaintiffs in employment discrimination cases: the exclusion of nondecisionmaker testimony that would seek to impugn the decisionmaker's view in merits-related terms, rather than going to the honestly-held nature of that view. Moreover, Grace's Response at 3 is entirely

6

correct in pointing out the procedural impermissibility of Ansul's bootstrap effort to convert this Court's single evidentiary ruling into a much broader ban[2]--one that this Court did not order. And finally, the same point made in the last section about Ansul's total failure to address the real (and dispositive) issue of Grace's termination, rather than the claimed defects in his performance as Market Development Manager, would render any claimed error in this respect nonprejudicial.

Gibbs Testimony

Ansul advances a nit as to the claimed preclusion of testimony by Gibbs about one component of an earlier performance rating of Pelton. Like Grace's counsel (see his Response at 3), this Court does not have a transcript and therefore cannot deal expressly with the context in which any such ruling was made. But even if it did, Ansul's very description of this snippet of evidence in a trial occupying more than a week shows it to be grasping at a mere straw--it is sheer nonsense for its counsel to label that wholly tangential matter as "extremely damaging to the defense case."

---

[2] Even then, Ansul's currently attempted offer of proof essentially amounts to nondecisionmaker Pelton's stating his opinion that he could have done the Market Development Manager work much more effectively than Grace. What has already been said about the inappropriateness of testimony going either way in those terms applies.

7

Kinkead Testimony

Here Ansul complains that its counsel was not permitted to have decisionmaker (and Ansul's President) Kinkead testify as to what his decision would have been on a hypothetical scenario that was contrary to Kinkead's own version of what he knew when he made his decision. It goes without saying that any such testimony would have been totally speculative. Again the vital issue in the employment discrimination context is whether the actual decision was based on the decisionmaker's honest beliefs. To permit the decisionmaker to bolster his adverse employment decision by speculating on a scenario at odds with his own testimony would distort matters impermissibly. And it must be repeated once more than Kinkead's testimony in this area related only to the Market Development Manager issue, not to the termination decision that formed the gravamen of Grace's claim. Finally, Grace's Response at 3-4 sets out other persuasive reasons for rejecting Ansul's position in this area.

Jury Instructions

This Court conducted an extended jury instruction conference, explaining in detail its rulings on each of the instructions proffered by the parties. For its part Ansul submitted several non-neutral forms of instruction that would have tended to poison the well by steering the jury in its direction, rather than the sound and neutral set of instructions

8

actually given to the jury--as to which see, e.g., our Court of Appeals' directives in such cases as <u>Wichmann v. Bd. of Trustees</u>, 180 F.3d 791, 804-05 (7th Cir. 1999), which rejected an employer's contention (in another ADEA case) identical to that urged by Ansul here.

Gibbs' Purported "Jokes"

Ansul seeks to usurp the jury's function by persistently attaching its own label of "jokes" to Gibbs' statements that expressly referred to age in a manner damaging to Ansul. What assertedly seems funny to Ansul and its counsel--they would prefer to trivialize (or better still, wipe out entirely) statements such as wanting to get rid of "all you 59 year olds" as "just kidding -- ha, ha!"--could of course be viewed in a totally different and unfavorable light by the impartial factfinding jury.[3] Here too Ansul grasps at a straw in an effort to save itself from drowning in the sea of the jury's adverse verdict. That objection too is totally without merit, requiring as it does the adoption of Ansul's self-serving perception of an item of admissible evidence.

John Nicholas ("Nicholas") Affidavit

Ansul's final objection is equally empty. As Grace's

---

[3] One is reminded of the classic tag line of the better half (Marian Jordan) of the Fibber McGee & Molly program:

> T'aint funny, McGee.

9

Response at 5 states accurately, Nicholas (whose testimony was presented to the jury via video deposition) referred to his affidavit during that testimony. This Court then also allowed into evidence the affidavit, whose content was surely relevant (and Ansul interposes no objection on that score, complaining only that the affidavit had not been identified separately in the final pretrial order). That ruling can hardly be labeled as erroneous, let alone clearly and prejudicially so.

Summary

Neither singly nor cumulatively do the items complained of by Ansul even approach the level taught by the authorities exemplified at the beginning of this section. Ansul's Rule 59(b) motion is also denied.

Conclusion

Grace's Response memorandum has amply demonstrated the deficiencies in Ansul's two-phase motion--so much so that this Court could well have contented itself with simply approving and adopting what was said by Grace's counsel there. Both for the reasons set out here and those stated in that Response, the Ansul motion is denied in its entirety.

_____
Milton I. Shadur
Senior United States District Judge

Date: July 5, 2001

10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL T. GRACE, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 98 C 3172 ) |
| ANSUL, INC., | ) Judge Shadur ) |
| Defendant. | ) Magistrate Keys |

## VERDICT

Do you find from a preponderance of the evidence:

1. That Daniel Grace ("Grace") was 40 years of age or over, was employed by Ansul, Inc. ("Ansul") and was then terminated by Ansul?

 Answer Yes or No  *yes*

2. That Grace's age was a substantial motivating factor in Ansul's decision to take that action?

 Answer Yes or No  *yes*

*Note:* If you answered "No" to either Question No. 1 or Question No. 2, you need not answer the remaining question.

3. That Ansul "willfully" violated the Age Discrimination in Employment Act as the term "willful" is defined in the Court's instructions?

 Answer Yes or No  *No*

Dated: May 29, 2001

_____    _____
Foreperson

_____    _____

_____    _____

_____    _____

**Court's Verdict Form**